McDONALD, J.,
concurring, in which BARBERA, C.J., and ADKINS, J., join.
I join in the judgment of the Court, but not in its opinion. My primary concern has to do with the Court’s emphatic embrace of the 1999 Jasen decision that limits the tort of conversion with respect to intangible property rights to circumstances where the defendant converts a document that embodies those rights. This seems antiquated, even if one is willing to include a “digital document” within the concept of document.[1] Many important and valuable property rights are not embodied in a physical document — or even something that could be called a “digital document.” For example, few shareholders of corporations possess physical stock certificates — or even “digital” stock certificates — embodying their intangible economic rights as a shareholder. When physical certificates exist, they generally remain in a depository and changes in ownership are reflected, not by a transfer of the certificate, but by book entries by the custodian or by a bank or brokerage Arm.[2] Similar methods for efficiently attributing and *74 transferring other types of intangible economic rights are no doubt developing with advances in technology. The Court’s holding in this case would seem to foreclose the possibility in many instances that one who has suffered a misappropriation of those rights could pursue a conversion remedy.
It seems that we should leave open the development of the tort of conversion to cover the misappropriation of such rights when other remedies prove unavailing — or at least we should allow for the development of a similar common law tort, perhaps under a different name. See, e.g., 3 D.B. Dobbs, P.T. Hayden & E.M. Bublick, The Law of Torts § 711 at p. 805 (2d ed. 2011) (“[I]t is also plausible to treat some accounts or “funds” as subject to conversion even where the defendant does not physically withhold a negotiable instrument from its owner. If the defendant, without authority to do so, transfers funds from the plaintiffs account to his own or another account, he is a converter even though the transfer is purely a bookkeeping entry, not a physical movement of cash.”) That is what the Restatement, in a passage just following the sentence quoted several times in the Court’s opinion,[3] suggests: “[Cjourts which prefer to adhere to the older theory may prefer to regard the liability as one for an intentional interference with the right, which is not identical with conversion, but is similar to it in its nature and legal consequences. It is, however, of very little practical importance whether the *75 tort is called conversion, or a similar tort with another name. In either case the recovery is for the full value of the intangible right so appropriated.” Restatement (Second) of Torts § 242, comment e.
Chief Judge BARBERA and Judge ADKINS have indicated that they join this opinion.

. The Court’s opinion characterizes digital media as "tangible” and “transferable.” Op. at 58-60, 115 A.3d at 131-32. A computer hard drive or disk is, of course, a physical object susceptible to physical movement, but misappropriation of the economic rights that may be embodied in such media does not necessarily involve any dominion or control over the media itself.

. A recent law review article describes the current system for holding shares of corporations:
*74 Most owners of large public companies hold shares in street name accounts. Title remains in the name of a nominee, generally a broker or bank. Although the nominee retains legal title, the beneficial owner has a contractual right to the economic benefits associated with the shares. Transfer occurs through changes in book entries. This form of share ownership facilitates the efficient processing and settlement of securities transactions and reduces the administrative backlog by eliminating the use of physical certificates.
Brokers and banks typically deposit the shares with The Depository
Trust Company (DTC), the world’s largest securities depository..... Bullard, Proxy Distribution and the Requirement of Impartiality, 91 Denv. U.L.Rev. Online 93, 95 (2014). The transfer of economic rights in shares thus does not involve a transfer of dominion or control over a "digital document.”

. Op. at 57-58, 60, 66-67, 115 A.3d at 131, 132-33, 136-37.